SHORT RECORD
25-2596
Filed 09/10/2025

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

UL LLC,

                  *Plaintiff,*

   -v-

JOSHUA CALLINGTON,

                 *Defendant.*

Case No. 1:24-cv-05631
Hon. Andrea R. Wood

## NOTICE OF APPEAL

PLEASE TAKE NOTICE that Defendant Joshua Callington ("Mr. Callington") hereby reserves the right to appeal to the U.S. Court of Appeals for the Seventh Circuit, the Mem. Opinion and Order entered August 7, 2025 (Dkt. 90), insofar as it concerns the denial of his anti-SLAPP motion. This notice is being in an abundance of caution pending the resolution of Mr. Callington's motion to reconsider (Dkt. 96), to ensure that his appellate rights are preserved irrespective of whether that motion is construed as tolling the deadline for filing a timely notice appeal under Fed. R. App. P. 4(a)(4)(A),(B).

Dated: September 8, 2025
New York, NY

Respectfully submitted,

By:    */s/ Agatha M. Cole*
       Agatha M. Cole
       BEVERLY PLLC
       43 West 43rd Street, Suite 159
       New York, NY 10036
       (828) 773-2628
       agatha@beverlypllc.com

*Counsel for Defendant, Joshua Callington*

## <u>CERTIFICATE OF SERVICE</u>

I, Agatha M. Cole, hereby certify that, on September 8, 2025, I caused a copy of the foregoing Notice of Appeal to be filed with the Clerk of Court and serve on all counsel of record, via CM/ECF.


By:    <u>*/s/ Agatha M. Cole*</u>
       Agatha M. Cole

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UL LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 24-cv-05631 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| JOSHUA CALLINGTON, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff UL LLC ("UL") performs social responsibility compliance audits for its customers. When one of its auditors, Defendant Joshua Callington, became concerned about UL's auditing practices, he contacted a journalist and served as a source for her article regarding the failure of private auditors to detect the use of migrant child labor by their customers' suppliers. Following publication of the article, UL conducted an internal investigation, which concluded that Callington had transferred documents containing UL's confidential information to his personal possession and disclosed certain of that confidential information to the journalist. As a result, UL brought the present action asserting claims against Callington under the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831 *et seq.*, and Illinois's Trade Secrets Act ("ITSA"), 765 ILCS 1065/1 *et seq.*, as well as state-law claims for breach of contract, breach of fiduciary duty, and conversion. Because Callington contends that UL's action is actually a strategic lawsuit against public participation ("SLAPP"), he has moved to strike UL's complaint under his home state's anti-SLAPP statute. (Dkt. No. 31.) Meanwhile, in an effort to prevent Callington from further disseminating its confidential information, UL has filed a motion for a limited preliminary injunction. (Dkt. No. 60.) For the reasons that follow, Callington's anti-

SLAPP motion to strike is denied and UL's motion for a limited preliminary injunction is granted.

## BACKGROUND

### I.     Factual Background

UL's complaint alleges as follows.

UL is a company that provides social responsibility compliance audits of its customers' suppliers in a wide variety of industries. (Compl. ¶ 17, Dkt. No. 1.) Those audits involve UL visiting the facilities of its customers' suppliers and evaluating their internal business documents and communications, and then providing UL's customers with a report assessing the suppliers' sustainability issues, supply network relationships, brand reputation, and regulatory compliance. (*Id.* ¶¶ 18–19.) To conduct the audits, UL necessarily requires access to its customers' and their suppliers' confidential business records. (*Id.* ¶¶ 19, 22–23.) Accordingly, UL undertakes a variety of measures to protect and maintain the confidentiality of both its own business records and those of its customers, and to train its auditors and contractors in its procedures for handling confidential information. (*Id.* ¶¶ 17, 21–23, 37–46.)

In May 2017, Callington began working for UL as an independent contractor auditor. (*Id.* ¶ 25.) When he was hired, Callington entered into an Independent Assessor Agreement with UL. (*Id.* ¶ 26.) About a year later, Callington signed another Independent Assessor Agreement ("Assessor Agreement") to continue his independent contractor work with UL. (*Id.* ¶ 28.) The Assessor Agreement contained confidentiality provisions that provided, in relevant part, that Callington "shall not voluntarily disclose information obtained by [him] from UL or its client(s) ('Confidential Information') to any third party, without the prior written consent of UL" and that Callington "agrees that all aspects of the services performed on behalf of UL and its clients, including without limitation the number and frequency of Assessments, shall be kept

2

confidential." (*Id.* ¶ 30.) Further, the Assessor Agreement stated that its confidentiality

provisions "shall survive the termination of the Agreement." (*Id.* ¶ 31.)

Later, in April 2019, Callington applied for a full-time employee role at UL. (*Id.* ¶ 32.)

Specifically, UL offered and Callington accepted the position of Team Leader CRS.[1] (*Id.* ¶¶ 33,

35.) UL's offer was contingent on Callington's agreement to UL's Confidentiality and Invention

Assignment Agreement ("Confidentiality Agreement"). The Confidentiality Agreement provided

as follows:

> During and after my employment with UL, I will keep all Confidential Information
> in strict confidence and will not disclose it without UL's prior written permission.
> During my employment, I will use Confidential Information solely as necessary for
> the performance of my duties as a UL employee and not for the benefit of any third
> parties, and I will not use Confidential Information after I am no longer a UL
> employee.
>
> . . . .
>
> Immediately upon demand by UL or termination of my employment for any reason,
> I will immediately deliver to UL all Confidential Information and all documents,
> notes, analyses, computer files, storage devices and other items that include
> Confidential Information that are in my possession.

(*Id.* ¶ 34.)

During his tenure as a UL Team Leader CRS, Callington conducted over 120 audits and,

as a result, gained substantial access to the confidential information of UL and its customers. (*Id.*

¶¶ 47–48.) Around September 2023, Callington reached out to a journalist with the New York

Times. (*Id.* ¶ 53.) UL had no knowledge of Callington's initial outreach. (*Id.* ¶ 54.) On December

28, 2023, the New York Times published an article about the social responsibility compliance

auditing industry in which Callington was identified by name as a source ("Article"). (*Id.* ¶¶ 60–

---

[1] While the complaint does not specify the meaning of the acronym "CRS," Callington's anti-SLAPP
motion to strike clarifies that CRS stands for "Corporate Responsible Sourcing." (Pl.'s Corrected Mot. to
Strike at 2 n.2, Dkt. No. 31.)

63; *see also* Hannah Dreier, *They're Paid Billions to Root Out Child Labor in the U.S. Why Do They Fail?*, N.Y. Times (Dec. 28, 2023), https://www.nytimes.com/2023/12/28/us/migrant-child-labor-audits.html.[2]) Broadly, the Article found that social responsibility compliance auditors like UL consistently failed to detect the use of migrant child laborers by their customers' suppliers. The Article's author stated that she had reviewed "confidential audits conducted by several large firms," and UL believes that it is one of the firms whose audits the journalist reviewed. (Compl. ¶¶ 61–63.)

Following the publication of the Article, UL began an internal investigation regarding Callington. (*Id.* ¶ 64.) Through its investigation, UL learned that Callington had transferred to his personal possession voluminous amounts of confidential information that he acquired during his work with UL. (*Id.* ¶ 65.) As part of the investigation, UL requested that Callington turn over his work laptop computer. (*Id.* ¶ 66.) Yet Callington delayed returning his laptop, and when he did, UL found that Callington had deleted information from it, including a personal Dropbox folder containing the documents that he provided to the New York Times journalist. (*Id.*) And in response to UL's request that he return and destroy all UL files in his possession, Callington instead provided copies of over 76,000 documents and refused to destroy the files that remained in his possession. (*Id.* ¶ 68.) When Callington was interviewed in the course of UL's investigation, he admitted that he transferred voluminous UL documents to his personal email account and other electronic storage accounts such as Dropbox. (*Id.* ¶ 70.) Callington also

---

[2] The complaint does not specifically identify the Article or elaborate on its substance. Nor does the complaint attach the Article as an exhibit. However, UL does attach the Article as an exhibit to its opposition to Callington's anti-SLAPP motion. (Pl.'s Opp'n to Def.'s Mot. to Strike, Ex. 1. Dkt. No. 39-1.) And because the Article is referenced in the complaint and is central to UL's claims, the Article is incorporated into the complaint by reference. *Fin. Fiduciaries, LLC v. Gannett Co.*, 46 F.4th 654, 663 (7th Cir. 2022).

acknowledged that he had provided UL documents and other information to the New York Times journalist. (*Id.*) And he admitted to deleting multiple files from his UL laptop prior to returning it, despite UL's express instruction that he preserve all documents on his work laptop. (*Id.* ¶¶ 67, 70.) Upon the conclusion of its investigation, UL provided Callington with written notice of his termination due to his violations of his confidentiality obligations and numerous UL policies and procedures. (*Id.* ¶¶ 71–73.)

As a result of his alleged misappropriation of UL's confidential information and subsequent disclosure of that information to the New York Times, UL has brought the present lawsuit against Callington. Counts I and II of the complaint assert claims for violations of the DTSA and ITSA, respectively. In Count III, UL asserts a claim of breach of contract—namely, the confidentiality provisions of the Assessor Agreement and his employment agreement's Confidentiality Agreement. UL also sets forth a claim for breach of fiduciary duty at Count IV and for conversion at Count V.

## II.    Procedural History

UL filed this action on July 3, 2024, and shortly thereafter Callington executed a waiver of service giving him 60 days to respond to the complaint. (Dkt. Nos. 1, 2.) Callington subsequently filed a *pro se* motion for an extension of his time to answer or otherwise respond to the complaint. (Dkt. No. 4.) He explained that he needed additional time because he was actively seeking counsel to represent him in this case. UL opposed Callington's requested 90-day extension and instead argued that the Court should grant him a shorter extension. Moreover, UL pointed to its allegations about Callington deleting documents from his UL laptop and requested that the Court enter an order requiring Callington to maintain and preserve the evidence in his possession and refrain from disclosing any UL information to third parties.

At the September 17, 2024 initial status hearing, the Court granted Callington's motion for an extension by holding in abeyance his obligation to answer or otherwise respond to the complaint at least until the next status hearing on October 23, 2024, at which time the Court would determine whether a further extension was warranted. At the same time, the Court granted UL's request for an interim document preservation and non-disclosure order and directed the parties to meet and confer and submit a proposed order to the Court.[3] However, the parties were not able to agree on the terms of a proposed order and UL sent the Court its version. Meanwhile, Callington was able to retain counsel, and that counsel appeared at the October 23, 2024 status hearing. After a hearing with counsel now present for both sides, the Court determined that it would enter an interim document preservation and non-disclosure order to preserve the status quo while the parties met and conferred on a long-term confidentiality order to supersede the interim order. In addition, the Court stated that it would hold off on setting Callington's responsive pleading date until the next status hearing to allow his counsel time to investigate his defenses and potential counterclaims. Following the hearing, the Court entered an interim document preservation and non-disclosure order ("Interim Order") in essentially the same form as proposed by UL. (Dkt. No. 17.) Shortly thereafter, the Court set a January 6, 2025 deadline for Callington to answer or otherwise respond to the complaint.

Once again, the parties were unable to reach an agreement as to the terms of a document preservation and non-disclosure order. Thus, UL moved for entry of its proposed confidentiality order. (Dkt. No. 22.) For this part, Callington moved to dissolve the Interim Order. (Dkt. No. 23.) Callington argued that the Interim Order functioned as a prior restraint against his ability to

---

[3] Callington, still proceeding *pro se*, agreed to the entry of an interim document preservation order but expressed hesitation about agreeing to any non-disclosure requirement that would prevent him from sharing information with a government agency until he retained counsel.

speak about his experience working at UL such that both the Interim Order and UL's proposed confidentiality order were more akin to an injunction.

On November 27, 2024, the Court held a motion hearing to address the parties' dispute. The Court began by observing that UL's requested confidentiality order appeared to do more than protect information that was going to be produced in discovery as it also sought to keep confidential UL documents and information that it contended had been improperly taken by Callington. UL confirmed that its goal was to obtain copies of all UL materials in Callington's possession so that it could review them and make confidentiality designations. However, the Court indicated that the type of relief UL was seeking through its confidentiality order seemed like relief better sought by means of a motion for a preliminary injunction. The Court took the matter under advisement at the conclusion of the hearing and stated that the Interim Order would remain in place for the time being.

Callington filed a motion to strike UL's complaint pursuant to Oregon's anti-SLAPP law on January 6, 2025—his deadline for his responsive pleading. (Dkt. No. 29.) The next day, Callington filed a corrected version of his motion to strike, which is the operative motion before this Court. (Dkt. No. 31.) While UL initially argued that Callington's motion was untimely because it was filed after the 60-day deadline set by Oregon's anti-SLAPP law, the Court ruled that it was exercising the discretion afforded to it under Oregon's anti-SLAPP law to allow the filing of Callington's motion beyond that deadline. (Dkt. No. 43.) As it was apparent that UL's request for what it described as a confidentiality order and Callington's anti-SLAPP motion raised overlapping issues, the Court determined to take up the motions together. Thus, after Callington's anti-SLAPP motion was fully briefed, the Court held a status hearing on both requests on May 5, 2025.

At the May 5, 2025 hearing, Callington expressed concern that UL was trying to obtain an order that would do more than protect its trade secrets but would also prevent Callington from speaking to the press or government authorities about the issues he observed during his time at UL. In response, UL reiterated to the Court that it was seeking only to put in place a procedure by which it could review the materials in Callington's possession, identify those documents that UL deemed to constitute its trade secrets or other confidential business information, and label them accordingly. UL would only seek to prevent Callington from disclosing the information that UL labeled confidential.

At that point, the Court confirmed for the parties that it did not believe that their dispute regarding the treatment of UL's materials that were already in Callington's possession—*i.e.*, the materials he allegedly converted in breach of his agreements with UL, as opposed to any information he might receive from UL through the discovery process—constituted a discovery dispute falling within the confines of Federal Rule of Civil Procedure 26(c). Rather, the Court determined that UL's desire to identify what confidential information was already in Callington's possession and to preclude Callington from further dissemination of that information was properly achieved through a preliminary injunction under Federal Rule of Civil Procedure 65. Consequently, the Court advised UL to refile its motion for a confidentiality order as a motion for a preliminary injunction. UL filed its motion for a limited preliminary injunction on May 20, 2025. (Dkt. No. 60.) The Court held oral argument on both UL's motion for a preliminary injunction and Callington's anti-SLAPP motion on June 26, 2025, after which it took both motions under advisement for ruling.[4]

---

[4] In advance of oral argument, Callington moved for leave to file supplemental confidential witness declarations. (Dkt. No. 74.) That motion sought both to introduce declarations from three social responsibility compliance auditors who would serve as fact witnesses and to keep those declarants' identities confidential. At oral argument, the Court expressed doubt as to whether those declarations

## DISCUSSION

Presently before the Court are Callington's anti-SLAPP motion to strike and UL's motion for a preliminary injunction. Because the arguments in Callington's anti-SLAPP motion impact the preliminary injunction analysis significantly, the Court begins by addressing Callington's motion to strike and then turns to consider the propriety of UL's requested injunctive relief.

### I.     Anti-SLAPP

According to Callington, UL brought this lawsuit solely to retaliate against him for speaking with the New York Times journalist on the failure of UL's audits to detect the use of migrant child labor. Callington therefore invokes the anti-SLAPP statute of Oregon—the state where he maintains a permanent residence—and moves pursuant to its procedures to strike UL's complaint.[5]

A SLAPP—which, again, stands for "strategic lawsuit against public participation"—refers to an action that is "filed, not to prevail, but to impose on the speaker the costs of defense, which can be substantial." *Intercon Sols., Inc. v. Basel Action Network*, 791 F.3d 729, 730 (7th

---

concerned the issues pertinent to the pending anti-SLAPP motion and motion for a preliminary injunction. The Court now confirms that the declarations proved to have little bearing on the motions before it and therefore denies Callington's motion for leave to file those declarations.

[5] The Court briefly addresses two ancillary motions pertaining to Callington's anti-SLAPP motion that were filed after the anti-SLAPP motion was fully briefed. First, UL moves to strike Callington's reply brief as untimely filed and further seeks to strike Exhibit A to that reply brief. (Dkt. No. 48.) UL's motion is denied. Callington did file his reply brief one day after the deadline set by the Court, but the Court excuses that brief delay. As for Exhibit A, the Court finds the content of the exhibit immaterial to the dispositive issues before it and further that it consists of evidence outside the pleadings that cannot be considered under the applicable standard of review. Nonetheless, the Court sees no need to strike the exhibit but instead admonishes Callington that he must adhere to the procedures of Northern District of Illinois Local Rule 26.2 when seeking to file a document under seal. Second, non-party Whistleblower & Source Protection Program, or "WHISPeR," seeks leave to file an *amicus curiae* brief in support of Callington's anti-SLAPP motion. (Dkt. No. 52.) It is within this Court's discretion to permit an *amicus curiae* brief. *E.g.*, *Jones Day v. Blockshopper LLC*, No. 08 CV 4572, 2008 WL 4925644, at *6 (N.D. Ill. Nov. 13, 2008). Although the *amicus curiae* brief did not affect the Court's disposition of Callington's anti-SLAPP motion, the Court did consider the arguments made in that brief, and therefore it grants WHISPeR's motion.

Cir. 2015). "SLAPPs . . . masquerade as ordinary lawsuits but are intended to deter ordinary people from exercising their political or legal rights or to punish them for doing so." *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013) (internal quotation marks omitted). For that reason, many states have enacted anti-SLAPP statutes that employ various measures "designed to reduce defense costs." *Intercon*, 791 F.3d at 730. Here, Callington relies on Oregon's anti-SLAPP statute. Or. Rev. Stat. § 31.150.

Before proceeding, the Court notes that UL does not dispute that Oregon law governs Callington's anti-SLAPP defense, notwithstanding the fact that UL brings its state-law claims under Illinois law. That is because "Illinois follows the doctrine of dépeçage, which refers to the process of cutting up a case into individual issues, each subject to a separate choice-of-law analysis." *Underground Sols., Inc. v. Palermo*, 41 F. Supp. 3d 720, 722 (N.D. Ill. 2014) (internal quotation marks omitted). "Though the place of injury is a central factor in determining what law governs a tort claim, in the anti-SLAPP context this factor is less important." *Chi v. Loyola Univ. Med. Ctr.*, 787 F. Supp. 2d 797, 803 (N.D. Ill. 2011). Rather, for purposes of an anti-SLAPP defense, "the central considerations are where the [at-issue] speech occurred and the domicile of the speaker." *Osundairo v. Geragos*, 447 F. Supp. 3d 727, 743 (N.D. Ill. 2020). And those considerations point to the place of Callington's domicile: Oregon.

Oregon's anti-SLAPP statute "seeks to minimize the effect of strategic suits intended to deter persons from expressing their views" by "permit[ing] defendants who are targeted for their protected statements to end such suits quickly and with minimal expense." *Lowes v. Thompson*, 374 Or. 23, 32 (Or. 2005) (en banc) (internal quotation marks omitted). To that end, the statute "creates an expedited procedure for dismissal of certain nonmeritorious civil cases without prejudice at the pleading stage." *Id.* (internal quotation marks omitted). Specifically, it "provides

for a two-step burden shifting approach." *Id.* At step one, the anti-SLAPP statute allows for a defendant to "make a special motion to strike against a claim in a civil action" falling into one of four specified categories of claims. Or. Rev. Stat. § 31.150(1). Relevant here, the statute provides that:

> A special motion to strike may be made under this section against any claim in a civil action that arises out of:
>
> . . .
>
> . . .
>
> (c) Any oral statement made, or written statement or other document presented, in a place open to the public or a public forum in connection with an issue of public interest; or
>
> (d) Any other conduct in furtherance of the exercise of the constitutional right of assembly, petition or association or the constitutional right of free speech or freedom of the press in connection with a public issue or an issue of public interest.

Or. Rev. Stat. § 31.150(2). It is the defendant's burden at this first step to show that the plaintiff's claims fall within one of the categories of claims set forth by the anti-SLAPP statute. Or. Rev. Stat. § 31.150(4). "If the defendant meets this burden, the burden shifts to the plaintiff in the action to establish that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case." *Id.*

Given that Oregon's anti-SLAPP statute provides a procedural mechanism for handling SLAPPs, that raises the question of whether a motion to strike can properly be asserted in federal courts, which "generally apply state substantive law and federal procedural law." *Dossett v. Ho-Chunk, Inc.*, 472 F. Supp. 3d 900, 906 (D. Or. 2020). The Ninth Circuit addressed that issue in connection with a motion to strike brought under California's anti-SLAPP law, which provides a two-step burden-shifting framework substantially similar to that established under the Oregon statute. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833–34

(9th Cir. 2018); *see also Wahab v. Wahab*, No. 3:23-cv-00098-SB, 2023 WL 5035662, at *3 (D. Or. Aug. 8, 2023) (observing that Oregon and California's anti-SLAPP statutes contain a similar motion to strike procedure). It decided that, "in order to prevent the collision of California state procedural rules with federal procedural rules," it would "review anti-SLAPP motions to strike under different standards depending on the motion's basis." In particular, the Ninth Circuit adopted the following procedure:

> [W]hen an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated. And, on the other hand, when an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the Federal Rule of Civil Procedure 56 standard will apply. But in such a case, discovery must be allowed, with opportunities to supplement evidence based on the factual challenges, before any decision is made by the court.

*Id.* at 834. Federal district courts in Oregon have applied this same approach for motions brought under Oregon's anti-SLAPP statute. *E.g.*, *Wahab*, 2023 WL 5035662, at *5.

This Court will follow the Ninth Circuit's approach, which appears to provide the best way of handling an anti-SLAPP motion consistent with the Federal Rules. And since Callington's anti-SLAPP motion mostly focuses on the sufficiency of UL's allegations, the Court's analysis will be governed by Rule 12(b)(6)'s standard. That means the Court looks to see whether UL's complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). As such, an anti-SLAPP motion in federal court essentially functions as a motion to dismiss, save for an additional preliminary step of determining whether the claims fall within the ambit of the anti-SLAPP statute. *See Miller v. Watson*, No. 3:18-cv-00562-SB, 2019 WL 1871011, at *4 n.6 (D. Or. Feb. 12, 2019) (observing that the Ninth Circuit's procedure for anti-SLAPP motions "appears to defeat the purpose of an anti-SLAPP motion, and converts it to a standard Rule 12(b)(6) motion to dismiss"). The first

step retains vitality, however, because if a lawsuit is dismissed as a SLAPP, then the successful

defendant will be entitled to recover his attorneys' fees. Or. Rev. Stat. § 31.152(3); *see also*

*Dossett*, 472 F. Supp. 3d at 907 n.3 (noting that the allowance of attorneys' fees to the successful

movant differentiates an anti-SLAPP motion from a standard Rule 12(b)(6) motion). With that

standard of review in mind, the Court proceeds with the two-step anti-SLAPP analysis.

### A.     Step One—Protected Statements

Callington contends that UL's claims all arise out of statements he made to the New York

Times about how social responsibility compliance audits overlook or fail to detect the use of

migrant child labor and are therefore protected under Oregon's anti-SLAPP law. In particular, he

asserts that his statements to the New York Times constitute either (1) statements made in a

public forum in connection with an issue of public interest, Or. Rev. Stat. section 31.150(2)(c),

or (2) other conduct in furtherance of the exercise of his constitutional right of free speech in

connection with a public issue or an issue of public interest, Or. Rev. Stat. section 31.150(2)(d).

Both categories of protected statements upon which Callington relies require that his

statements pertain to a matter of public interest. And the Court finds that Callington's statements

to the New York Times journalist about factories surreptitiously using migrant child laborers is

unquestionably a matter of public interest. *See, e.g.*, *DeHart v. Tofte*, 533 P.3d 829, 843 (Or. Ct.

App. 2023) ("[W]e have interpreted 'issue of public interest' to have its common-sense

meaning—namely, an issue that is of interest to the public." (internal quotation marks omitted)).

Moreover, his statements were published in a news article that is available throughout the

country both in print and online, and thus those statements were made in a public forum. *E.g.*,

*Dossett*, 472 F. Supp. 3d at 908 ("[The defendants] published the news articles online, and

therefore the Court agrees that the public forum requirement is satisfied here.").

While UL does not dispute that Callington made statements on a matter of public interest in a public forum, it nonetheless denies that its claims are predicated on Callington speaking to a journalist. As UL correctly notes, for a claim to arise out of activity protected under anti-SLAPP law, "the act underlying the claim itself must have been an act in furtherance of the [protected speech] and not just associated with it." *Deep Photonics Corp. v. LaChapelle*, 385 P.3d 1126, 1135 (Or. Ct. App. 2016). However, UL incorrectly characterizes its claims as simply concerning Callington's unauthorized transfer of its confidential information and not his speaking with the New York Times. It is evident to this Court that Callington's transfer of UL's confidential information to himself was an act done in furtherance of his subsequent participation in the Article.

Moreover, UL's claims arise, at least in part, out of Callington's disclosure of UL's confidential information to the New York Times. Indeed, four of the complaint's five Counts expressly reference those disclosures as a basis for his liability. For the trade secret claims, UL alleges that Callington misappropriated its trade secrets by, among other things, "disclosing trade secret information belonging to UL to the *New York Times* or other media outlets." (Compl. ¶¶ 83, 98.) Similarly, UL claims that Callington committed breach of contract "by, among other actions, voluntarily disclosing UL's confidential information and UL's clients' confidential information to a third party, including the *New York Times*, and a reporter for the *New York Times*, without prior written consent of UL." (*Id.* ¶ 110.) And the breach of fiduciary duty claim asserts that Callington engaged in efforts to sabotage its business and caused UL damages that include the "costs of retaining existing customers whose confidential information [Callington] shared with the *New York Times* and caused to be publicly disclosed." (*Id.* ¶ 119.) And though the conversion claim does not directly reference Callington's statements to the New York Times,

14

it makes clear that the "claim is based solely on Defendant's disclosure of confidential information belonging to UL and confidential information belonging to UL's customers." (*Id.* ¶ 122.) Consequently, the Court concludes that Callington has made the requisite showing at step one that UL's claims arise out of statements and conduct that are protected under Oregon's anti-SLAPP law.

### B.    Step Two—Sufficiency of the Claims

Turning to step two, the Court evaluates the viability of the claims set forth in UL's complaint. As discussed above, the Court proceeds at this step as if Callington challenged the claims by way of an ordinary Rule 12(b)(6) motion to dismiss.

#### 1.    *Trade Secrets*

Counts I and II of the complaint assert claims under the federal DTSA and Illinois's parallel statute, the ITSA. "Courts often analyze motions to dismiss DTSA and ITSA claims together because the pertinent definitions of the two acts overlap." *Aon plc v. Infinite Equity, Inc.*, No. 19-cv-07504, 2021 WL 4034068, at *12 (N.D. Ill. Sept. 3, 2021) (internal quotation marks omitted). To state a claim under either statute, a plaintiff must plead "(1) there are trade secrets (2) that Defendant[] misappropriated." *Id.*

Callington does not challenge that the allegations about his disclosures to the New York Times satisfy the misappropriation element. Instead, Callington argues that the complaint fails adequately to allege the existence of a trade secret. Under the DTSA, information is considered a trade secret where

> (1) "the owner thereof has taken reasonable measures to keep such information secret" and (2) "the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information."

*Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 540 (7th Cir. 2021) (quoting 18 U.S.C. § 1839(3)). The ITSA's definition is "materially identical." *Id.* (citing 765 ILCS 1065/2(d)). Here, UL's complaint alleges that, as an auditor, Callington had access to trade secret information regarding UL's audit reports, internal customer information, and audit procedures and practices. (Compl. ¶ 79.) Such information is not readily known to others but a product of UL's substantial expenditures of time and money into developing relationships with potential and actual customers, and it is economically valuable to UL and provides it a competitive advantage over rival auditors. (*Id.* ¶¶ 17, 80.) And the complaint describes in detail the various measures UL undertakes to keep such trade secret information confidential. (*Id.* ¶¶ 20–23, 37–43.)

    Faced with the complaint's well-pleaded allegations regarding UL's trade secrets, Callington can only fault the complaint for failing to specifically identify any trade secret in his possession or disclosed to the New York Times. However, that argument demands more specificity from the complaint than is required at the pleading stage, where a plaintiff need "only plead the existence of trade secrets in broad strokes." *Packaging Corp. of Am., Inc. v. Croner*, 419 F. Supp. 3d 1059, 1066 (N.D. Ill. 2020); *see also Mission Measurement Corp. v. Blackbaud, Inc.*, 216 F. Supp. 3d 915, 920 (N.D. Ill. 2016) ("[T]rade secrets need not be disclosed in detail in a complaint alleging misappropriation for the simple reason that such a requirement would result in public disclosure of the purported trade secrets." (internal quotation marks omitted)). Because UL's complaint provides enough detail as to the existence of its trade secrets, it may proceed on its DTSA and ITSA claims.

### 2.    *Breach of Contract*

    For Count III, UL asserts a breach of contract claim seeking to hold Callington liable for breaching the Confidentiality Agreement and the confidentiality provisions of the Assessor

Agreement. In Illinois, "[t]o sustain a complaint for breach of contract, a plaintiff must allege

that a contract existed, he performed his obligations under the contract, the defendant breached

the contract, and the plaintiff was damaged as a result of the breach." *Davis v. Davis*, 144 N.E.3d

649, 654 (Ill. App. Ct. 2019) The Court finds that UL's complaint adequately alleges each of

those elements—Callington agreed to the confidentiality obligations set forth in both the

Confidentiality Agreement and the Assessor Agreement, in exchange UL offered him continued

employment and compensation, Callington breached those agreements by transferring UL's

confidential information to his personal possession and then disclosing certain of that

information to the New York Times, and his disclosure damaged UL and its customer

relationships. While Callington contends that his confidentiality agreements could be subject to

challenge as overbroad, he does not develop that argument any further and it is therefore waived

as a basis for purposes of the anti-SLAPP motion. *E.g.*, *Schaefer v. Univ. Scaffolding & Equip.,*

*LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are

waived . . . .").

    In addition, Callington contends that, because he qualifies as a whistleblower, it is against

public policy to enforce the confidentiality agreements in the circumstances alleged. He asserts

that public policy favors shielding a whistleblower employee from liability for disclosing

confidential information reflecting their employer's wrongdoing, as seen in various federal and

state whistleblower protection laws. Notably, the specific statutes Callington cites cover only

disclosures to government authorities or disclosures made in connection with judicial or other

official proceedings. 18 U.S.C. § 1514A(a) (protecting employees of publicly held companies

from retaliation for providing information regarding conduct they believe to be securities fraud

when the information is provided to "a Federal regulatory or law enforcement agency," "any

17

member of Congress or any committee of Congress," or "a person with supervisory authority over the employee"); 31 U.S.C. § 3730(h)(1) (protecting an employee from retaliation for their lawful acts in furtherance of an action under the False Claims Act); 740 ILCS 174/15(b) ("An employer may not take retaliatory action against an employee for disclosing . . . to a government or law enforcement agency information related to an activity, policy, or practice of the employer, where the employee has a good faith belief that the activity, policy, or practice of the employer (i) violates a State or federal law, rule or regulation or (ii) poses a substantial and specific danger to employees, public health, or safety.").

Although whistleblowers may receive some protection from liability for breaching confidentiality agreements by disclosing information to an appropriate governmental authority, Callington fails to demonstrate that those protections extend to shield whistleblowers who disclose their employer's confidential information to the press. On the contrary, courts regularly decline to construe whistleblower protection provisions as protecting disclosures to the media. *See, e.g.*, *Tides v. The Boeing Co.*, 644 F.3d 809, 816 (9th Cir. 2011) ("We . . . hold that § 1514A(a)(1) does not protect employees of publicly-held companies from retaliation when they disclose information regarding designated types of fraud or securities violations to members of the media."); *Pacheco v. Waldrop*, 84 F. Supp. 3d 606, 608–09 (W.D. Ky. 2015) (finding the plaintiff's disclosures to a newspaper were not protected under Kentucky's whistleblower protection law). Consequently, courts decline to read statues protecting whistleblowers' disclosures to government or law enforcement agencies as establishing a public policy against enforcing confidentiality agreements in cases where a whistleblower discloses their employer's confidential information to the press. *See, e.g.*, *Erhart v. Bofl Holding, Inc.*, No. 15-cv-02287-BAS-NLS, 2017 WL 588390, at *16 (S.D. Cal. Feb. 14, 2017) (holding that there was no public

policy preventing enforcement of a confidentiality agreement with respect to disclosures to the press because neither 18 U.S.C. § 1514A nor the other whistleblower protections invoked by the disclosing party protected disclosures to the press); *Gosa v. Nu-World Amaranth, Inc.*, No. 10-CV-2074-LRR, 2012 WL 463023, at *4 (N.D. Iowa Feb. 11, 2012) ("[The plaintiff] does not cite any public policy that protects an employee who violates employment agreements by reporting confidential information to the media . . . ."). Likewise, this Court concludes that Callington's general invocation of whistleblower protection laws fails to establish a public policy that protects Callington from liability for disclosing UL's confidential information to the New York Times.

In sum, UL pleads a viable breach of contract claim, and Callington fails to demonstrate the existence of a public policy precluding the enforcement of the Confidentiality Agreement and confidentiality provisions of the Assessor Agreement against him in the circumstances here. For that reason, the Court denies Callington's effort at dismissing Count III.

### 3.    Breach of Fiduciary Duty

UL alleges with Count IV that Callington breached his fiduciary duties of loyalty and good faith by using UL's confidential information to disparage UL in the New York Times Article. "Under Illinois law, employees as well as officers and directors owe a duty of loyalty to their employer." *Beltran v. Brentwood N. Healthcare Ctr., LLC*, 426 F. Supp. 2d 827, 831 (N.D. Ill. 2006) (internal quotation marks omitted). Among other things, an employee's duty of loyalty prohibits them from "misappropriating the employer's property." *Chi. Title Ins. Co. v. Sinikovic*, 125 F. Supp. 3d 769, 777 (N.D. Ill. 2015). The Court concludes that UL states a breach of fiduciary duty claim here, as it alleges that Callington misappropriated his employer UL's property—its confidential business documents—and used that property in a way that harmed UL's business. Thus, UL may proceed on its breach of fiduciary duty claim.

### 4.  Conversion

Finally, Count V of the complaint asserts a conversion claim. An Illinois state-law claim for conversion requires a plaintiff to allege: "(1) an unauthorized and wrongful assumption of control, dominion, or ownership by defendant over plaintiff's personalty; (2) plaintiff's right in the property; (3) plaintiff's right to the immediate possession of the property, absolutely and unconditionally; and (4) a demand for possession of the property." *Gen. Motors Corp. v. Douglass*, 565 N.E.2d 93, 96–97 (Ill. App. Ct. 1990). UL has adequately pleaded a conversion claim, as it alleges that Callington took possession of thousands of UL's internal and confidential business records and continues to retain them following his termination, even as the Confidentiality Agreement required him to "immediately deliver to UL" all confidential information in his possession upon termination. (Compl. ¶¶ 34, 47–51, 68, 70–72.) And UL asked Callington to either return or destroy the original files but he has failed to do so. (*Id.* ¶¶ 68–73.)

Because each of the five Counts of UL's complaint states a viable claim, the Court denies Callington's anti-SLAPP motion in full.

## II.    Preliminary Injunction

After this Court indicated that an injunction was the proper vehicle for UL's efforts at preventing Callington from further disseminating its trade secrets and other confidential information, UL moved for a limited preliminary injunction. With its motion for a preliminary injunction, UL requests relief that would enable it to obtain copies of all of its documents in Callington's possession so that UL can then review those documents and, where appropriate, apply confidentiality designations that would identify for Callington the documents and information he is restricted from disclosing pending resolution of this lawsuit. To that effect, UL requests that the Court enter an injunction that would do as follows:

20

1) Require Callington, within not later than 14 days after the Court's entry of an injunctive order, to produce to UL copies of any and all UL documents and ESI [Electronically Stored Information]—and any other UL property, tangible or intangible—that is in his possession or under his control and that he acquired or took from UL throughout his employment or working-relationship with UL. This will reasonably allow UL to designate the documents and ESI as "confidential"—where needed and appropriate—under the Interim Document Preservation Non-Disclosure Order in place and/or under a final protective order that is put in place for this case; and

2) Restrain Callington from using, modifying, deleting, publishing, disseminating, or otherwise disclosing to any person or entity (except as required or allowed by law)—whether in hard copy or electronic form—any of UL's or its customers' or employees' confidential, proprietary, and trade secret information, business documents, ESI, personal identifying information, and any other property, tangible or intangible, that is Callington's possession or under his control and which he acquired or took from UL through his employment or working-relationship with UL.

(Pl.'s Mem. in Supp. of Mot. for Prelim. Inj. at 2, Dkt. No. 61.) UL further notes that although Callington did, during UL's internal investigation, provide UL with some copies of the information in his possession, there are gaps in that production. Moreover, Callington outright refused to turn over copies of certain documents. For those reasons, UL asserts that it needs the requested injunctive relief.

"A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need." *Turnell v. CentiMark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). Determining whether a party is entitled to injunctive relief entails a two-step analysis. *Id.* At the first step, the moving party "must make a threshold showing that: (1) absent preliminary injunctive relief, [it] will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) [it] has a reasonable likelihood of success on the merits." *Id.* at 661–62. "If the plaintiff fails to meet any of these threshold requirements, the court must deny the injunction." *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019). If the moving party makes its threshold showing, a district court then "proceeds

to a balancing analysis, where the court must weigh the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the court were to grant it." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). Also considered in the balancing analysis is the public interest, meaning "the effects, if any, that the grant or denial of the preliminary injunction would have on nonparties." *Turnell*, 796 F.3d at 662. "Ultimately, the moving party bears the burden of showing that a preliminary injunction is warranted." *Id.*

### A.     Likelihood of Success on the Merits

The Court begins by addressing UL's likelihood of success on the merits. For purposes of its motion for a preliminary injunction, UL argues its likelihood of success on the merits only as to the breach of contract and conversion claims. In arguing against UL's likelihood of success, Callington relies in large part on the arguments he presented in his anti-SLAPP motion. The Court has now denied Callington's anti-SLAPP motion, and the arguments he adopts from that motion are equally unavailing with respect to UL's preliminary injunction motion.

The one new merits argument that Callington raises in his opposition to a preliminary injunction relates to the breach of contract claim. Specifically, he expands on the perfunctory argument in his anti-SLAPP motion that the Confidentiality Agreement and the confidentiality provisions of the Assessor Agreement are overbroad and therefore unenforceable. As a restrictive covenant, a confidentiality provision "must be reasonable, but the standard for reasonableness is more forgiving" than for other restrictive covenants such as non-solicitation and non-compete clauses. *Talman Consultants, LLC v. Urevig*, No. 22 C 6540, 2023 WL 1451532, at *4 (N.D. Ill. Feb. 1, 2023). Thus, contrary to Callington's contention that the confidentiality agreements here are overbroad due to their lack geographic and durational limitations, "a confidentiality agreement will not be deemed unenforceable for lack of durational or geographic limitations where trade secrets and confidential information are involved," *Coady*

22

*v. Harpo, Inc.*, 719 N.E.2d 244, 250 (Ill. App. Ct. 1999). So long as the information protected by a confidentiality agreement "is actually confidential and reasonable efforts were made to keep it confidential," the agreement will be enforced. *Tax Track Sys. Corp. v. New Investor World, Inc.*, 478 F.3d 783, 787 (7th Cir. 2007). And here, the Confidentiality Agreement and the confidentiality provisions of the Assessor Agreement are limited to UL's actual confidential information, such as "business plans and strategies, financial information, testing procedures and equipment, Inventions . . . and client product information." (Compl., Ex. 4, Confidentiality Agreement, Dkt. No. 1-1; *see also* Compl. Ex. 3, Assessor Agreement § 7.1, Dkt. No. 1-1 ("The term 'Confidential Information' as used herein means and includes any and all data or information and documentation relating to the business of UL or its client(s) that is not generally known to the public or readily obtainable from outside sources.").) Furthermore, as discussed above, UL undertook extensive efforts to ensure that its confidential information remained confidential. (Compl. ¶¶ 20–23, 37–43.)

Ultimately, Callington does not dispute (at least not for present purposes) the conduct at issue in UL's complaint—*i.e.*, that he disclosed certain of UL's confidential information to the New York Times. Moreover, Callington offers this Court no reason to find that his confidentiality obligations to UL were invalid. His only other defense against UL's claims is that they are part of a SLAPP action, a contention this Court rejected above. Consequently, the Court concludes that UL has shown a sufficient likelihood of succeeding on the merits of its breach of contract and conversion claims.

### B.     No Adequate Remedy at Law and Irreparable Harm

To obtain a preliminary injunction, UL also must show "that it has no adequate remedy at law and, as a result, that it will suffer irreparable harm if the injunction is not issued." *Foodcomm Int'l v. Barry*, 328 F.3d 300, 304 (7th Cir. 2003). UL contends that it will suffer irreparable harm

for which it has no adequate remedy if it is not able to identify its trade secrets and confidential information in Callington's possession and preclude him from further disseminating it. Specifically, UL fears that it will experience a loss of goodwill and reputation among its customers stemming from their loss of confidence in UL's ability to handle their confidential information.

Loss of goodwill and business reputation are both deemed to constitute irreparable harms. *E.g.*, *Life Spine*, 8 F.4th at 546. Courts have likewise found that, in cases where a defendant discloses confidential information regarding a plaintiff employer's customers, "the endangerment of those [customer] relationships can also constitute irreparable harm." *SKF USA, Inc. v. Bjerkness*, 636 F. Supp. 2d 696, 716 (N.D. Ill. 2009). Where proven, "the damages flowing from such losses are difficult to compute." *Ram Prods. Co. v. Chauncey*, 967 F. Supp. 1071, 1086 (N.D. Ind. 1997). As a result, there is no adequate remedy at law for those harms. *E.g.*, *Diamond Blade Warehouse, Inc. v. Paramount Diamond Tools, Inc.*, 420 F. Supp. 2d 866, 872 (N.D. Ill. Feb. 24, 2006) (observing that loss of good will and continuity of business relationships with customers are harms that are "oftentimes fatal to businesses, and cannot be readily calculated and cured by an award of monetary damages").

Callington does not dispute that he has already disclosed certain of UL's confidential information in connection with the Article. Moreover, in its brief opposing UL's preliminary injunction motion, Callington focuses primarily on the likelihood of success factor, believing it to weigh so strongly in his favor that "considering the additional factors is frankly a waste of time and judicial resources." (Def.'s Opp'n to Pl.'s Mot. for Prelim. Inj. At 26, Dkt. No. 69.) As should be evident from its analysis above, the Court disagrees. Nonetheless, the Court notes that Callington's disclosures to the New York Times already occurred and injunctive relief cannot be

24

predicated solely on past harm. *DM Trans, LLC v. Scott*, 38 F.4th 608, 621 (7th Cir. 2022)

("Regardless of what costs were incurred or avoided in the past, a future threat of irreparable

harm must exist to warrant injunctive relief."). On this point, Callington seeks to rebut UL's

claimed risk of future irreparable harm by submitting a declaration in which he disclaims any

intention of making further disclosures to the press relating to UL. Yet prior to submitting that

declaration, Callington has been equivocal, at best, about whether or not he would continue to

discuss UL with members of the press. Further, even his declaration hedge on the matter: "I do

not ***presently intend*** to disclose any documents acquired during my employment with UL to any

other person or entity in the future (unless it is a lawfully protected disclosure to a government

official, made on the advice of counsel, under applicable provisions of state and federal law)."

(Callington Decl. ¶ 33, Dkt. No. 68 (emphasis added).) Indeed, Callington has made clear that he

feels it imperative to bring public attention to what he believes are UL's problematic business

practices. For all these reasons, the Court finds that, absent an injunction, UL faces an ongoing

risk that Callington will make additional unauthorized disclosures of UL's confidential business

information.

### C.    Balance of Harms and Public Interest

Finally, the Court finds that the balance of harms weighs in favor of UL. As discussed

above, Callington largely argues the merits in opposition to UL's preliminary injunction motion

and his brief provides little in support of any harm he would suffer from an injunction. An

injunction is also in the public interest, as "[c]ourts in this District have recognized that the

public interest is served by enforcing valid contracts." *Brown & Brown, Inc. v. Ali*, 494 F. Supp.

2d 943, 955 (N.D. Ill. 2007).

At oral argument, Callington suggested that an injunction would cause harm both to

himself and the public at large because it would preclude him from alerting the appropriate

government authorities to potential illegal conduct on UL's part. But the limited injunction sought by UL would do no such thing. On the contrary, UL would only restrain Callington from disclosing UL's confidential information "except as required or allowed by law." And, as shown above, there are numerous state and federal whistleblower protection laws that permit employees to disclose their employer's confidential information, where appropriate, to governmental authorities. All that UL's requested injunction would do is prevent Callington from making disclosures that are not otherwise protected by law. To the extent there is still any confusion over whether disclosures to law enforcement are permitted, such language can be added to the injunction order. In short, Callington suffers no irreparable harm from having to conform his conduct to the law and the public interest is served by requiring Callington to conduct his whistleblower activities in adherence with the applicable whistleblower protection laws.

### D.   Injunctive Relief

In sum, the Court finds that UL has satisfied the requirements for a preliminary injunction. Accordingly, the Court will enter a limited preliminary injunction along the lines of what UL has requested. Such an injunction will allow UL to identify the trade secrets and confidential information in Callington's possession so that it can restrict Callington from further dissemination of such information without authorization. At the same time, the injunction will not prevent Callington from approaching or cooperating with governmental authorities about his concerns with UL, provided he does so in accordance with the law.

**CONCLUSION**

For the foregoing reasons, Callington's anti-SLAPP motion to strike (Dkt. No. 31) is

denied and UL's motion for a limited preliminary injunction (Dkt. No. 60) is granted.


ENTERED:


Dated:  August 7, 2025

_____

Andrea R. Wood
United States District Judge

# United States District Court
## Northern District of Illinois – CM/ECF NextGen 1.8 (rev. 1.8.3) (Chicago)
## CIVIL DOCKET FOR CASE #: 1:24-cv-05631
## Internal Use Only

UL LLC v. Callington
Assigned to: Honorable Andrea R. Wood
Demand: $75,000
Cause: 18:1836(a) Injunction against Misappropriation of Trade
Secrets

Date Filed: 07/03/2024
Jury Demand: None
Nature of Suit: 880 Defend Trade Secrets
Act (of 2016)
Jurisdiction: Federal Question

**Plaintiff**

**UL LLC**                              represented by     **Emily E Levy**
Littler Mendelson, P.C.
41 S. High Street
Suite 3250
Columbus, OH 43215
614-463-4206
Email: elevy@littler.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James M. Witz**
Littler Mendelson, PC
321 North Clark Street
Suite 1000
Chicago, IL 60654
(312) 372-5520
Fax: Active
Email: jwitz@littler.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jenna R. Seychel**
Littler Mendelson P.C.
41 S High St
Suite 3250
Columbus, OH 43215
(614) 463-4217
Fax: Pro Hac Vice
Email: jseychel@littler.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kevin E Griffith**
Littler Mendelson, P.C.
41 S. High Street
Suite 3250

Columbus, OH 43215
614-463-4210
Fax: Pro Hac Vice
Email: kgriffith@littler.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Richard T. Kienzler**
Littler Mendelson
321 North Clark Street
Suite 1100
Chicago, IL 60654
312-795-3254
Fax: 312-372-7880
Email: rkienzler@littler.com
*ATTORNEY TO BE NOTICED*

V.

**<u>Defendant</u>**

| | | |
|---|---|---|
| **Joshua Callington**<br>205 S Higley Road<br>Lot 213<br>Mesa, AZ 85206<br>612-879-7300 | represented by | **Agatha M Cole**<br>Beverly PLLC<br>43 West 43rd Street<br>Suite 159<br>New York, NY 10036<br>828-773-2628<br>Email: agatha@beverlypllc.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Leonard C. Goodman**<br>53 W. Jackson Blvd.<br>Suite 1650<br>Chicago, IL 60604<br>(312) 986-1984<br>Fax: Active<br>Email: lcgoodman@rcn.com<br>*ATTORNEY TO BE NOTICED* |

**<u>Amicus</u>**

| | | |
|---|---|---|
| **Whistleblower & Source Protection Program (WHISPeR)**<br>1717 K Street, NW, Suite 900<br>Washington, DC 20006<br>301-351-3582 | represented by | **Leonard C. Goodman**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|
| 07/03/2024 | <u>1</u> | COMPLAINT filed by UL LLC; Filing fee $ 405, receipt number AILNDC-22211747. (Attachments: # <u>1</u> Exhibit 1-6, # <u>2</u> Civil Cover Sheet)(Kienzler, Richard) (Entered: 07/03/2024) |

| | | |
|---|---|---|
| 07/03/2024 | | CASE ASSIGNED to the Honorable Andrea R. Wood. Designated as Magistrate Judge the Honorable Jeffrey Cole. Case assignment: Random assignment. (Civil Category 1). (evw) (Entered: 07/03/2024) |
| 07/03/2024 | | CLERK'S NOTICE: Pursuant to Local Rule 73.1(b), a United States Magistrate Judge of this court is available to conduct all proceedings in this civil action. If all parties consent to have the currently assigned United States Magistrate Judge conduct all proceedings in this case, including trial, the entry of final judgment, and all post-trial proceedings, all parties must sign their names on the attached <u>Consent To</u> form. This consent form is eligible for filing only if executed by all parties. The parties can also express their consent to jurisdiction by a magistrate judge in any joint filing, including the Joint Initial Status Report or proposed Case Management Order. (evw, ) (Entered: 07/03/2024) |
| 07/11/2024 | 2 | WAIVER OF SERVICE returned executed by UL LLC. Joshua Callington waiver sent on 7/10/2024, answer due 9/9/2024. (Kienzler, Richard) (Entered: 07/11/2024) |
| 07/15/2024 | 3 | MINUTE entry before the Honorable Andrea R. Wood: Telephonic initial status hearing set for 9/17/2024 at 9:00 AM. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. The call-in number is (888) 557-8511 and the access code is 3547847. Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. The parties are directed to meet and conduct a planning conference pursuant to Federal Rule of Civil Procedure 26(f). At least seven days before the initial status hearing, the parties shall file a joint written status report, not to exceed five pages in length. The initial status report shall provide the information described on the Court's website at www.ilnd.uscourts.gov under District Judges, Judge Andrea R. Wood, Initial Status Conference. Mailed notice (lma, ) (Entered: 07/15/2024) |
| 08/26/2024 | 4 | MOTION for enlargement of time to answer or otherwise plead filed by Defendant Joshua Callington. (Received via pro se email on 8/26/2024) (jh, ) (Entered: 08/26/2024) |
| 09/03/2024 | 5 | RESPONSE by UL LLC in Opposition to MOTION by Defendant Joshua Callington g 4 (Attachments: # 1 Exhibit, # 2 Exhibit)(Kienzler, Richard) (Entered: 09/03/2024) |
| 09/09/2024 | 6 | OPPOSITION by Defendant Joshua Callington to Plaintiff's Motion to Oppose Defendant's Motion for Enlargement of Time to Answer or Otherwise Plead. (Received via pro se email on 9/9/2024) (mcp, ) (Entered: 09/09/2024) |
| 09/10/2024 | 7 | STATUS Report by UL LLC (Attachments: # 1 Exhibit)(Kienzler, Richard) (Entered: 09/10/2024) |
| 09/12/2024 | 8 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC-22466754. (Griffith, Kevin) (Entered: 09/12/2024) |

| 09/13/2024 | 9 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC-22472432.<br><br>(Levy, Emily) (Entered: 09/13/2024) |
| --- | --- | --- |
| 09/16/2024 | 10 | MINUTE entry before the Honorable Andrea R. Wood: Defendant's motion for enlargement of time to answer or otherwise plead 4 , and Plaintiff's response in opposition, will be addressed at the telephonic initial status hearing on 9/17/2024. Mailed notice (lma, ) (Entered: 09/16/2024) |
| 09/16/2024 | 11 | MINUTE entry before the Honorable Andrea R. Wood: Motions to appear pro hac vice 8 and 9 are granted. Mailed notice (lma, ) (Entered: 09/16/2024) |
| 09/17/2024 | 12 | MINUTE entry before the Honorable Andrea R. Wood: Telephonic status hearing held on 9/17/2024. For the reasons stated on the record, Defendant's motion for enlargement of time to answer or otherwise plead 4 is granted in part as follows. Plaintiff's obligation to answer or otherwise respond to the complaint shall be held in abeyance until the next status hearing to allow time for Defendant to secure counsel. The Court will evaluate the necessity of a continued extension of the answer date at the next status hearing. In the meantime, to maintain the status quo and prevent prejudice to Plaintiff from Defendant's request for a significant extension of time to respond to the complaint, the Court grants Plaintiff's request for entry of a document preservation and non-disclosure order. By 5:00 pm on 9/19/2024, the parties shall submit a revised document preservation and non-disclosure proposed order to chambers. The Clerk is directed to send Defendant Joshua Callington a blank pro se appearance form, to be completed and filed by Defendant Callington. Telephonic status hearing set for 10/23/2024 at 9:15 AM. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. The call-in number is (888) 557-8511 and the access code is 3547847. Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (lma, ) (Entered: 09/18/2024) |
| 09/17/2024 | 13 | PRO SE Appearance by Defendant Joshua Callington. (Received via Box.com on 09/17/2024) (daj, ) (Entered: 09/18/2024) |
| 09/19/2024 | 14 | STATUS Report by UL LLC<br><br>(Attachments: # 1 Exhibit)(Kienzler, Richard) (Entered: 09/19/2024) |
| 10/23/2024 | 15 | ATTORNEY Appearance for Defendant Joshua Callington by Agatha M Cole (Cole, Agatha) (Entered: 10/23/2024) |
| 10/24/2024 | 16 | MINUTE entry before the Honorable Andrea R. Wood: Telephonic status hearing held on 10/23/2024. Counsel appears for Defendant Callington. For reasons stated on the record, the interim document preservation non-disclosure order will be entered. Enter Order. This is an interim order intended to maintain the status quo while counsel discuss the terms of an order to remain in place for the duration of the case. Counsel for the parties shall meet and confer and file a motion for entry of a confidentiality order by 11/1/2024 to supersede the document preservation non-disclosure order. If the parties cannot agree, they can file opposing motions. The Court will set a responsive pleading date for Defendant at the next status hearing. |

| | | |
|---|---|---|
| | | Telephonic status hearing is set for 11/6/2024 at 9:30 p.m. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. The call-in number is (888) 557-8511 and the access code is 3547847. Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (sxh, ) (Entered: 10/24/2024) |
| 10/24/2024 | 17 | INTERIM DOCUMENT PRESERVATION AND NON-DISCLOSURE ORDER Signed by the Honorable Andrea R. Wood on 10/24/2024. Mailed notice. (sxh, ) (Entered: 10/24/2024) |
| 10/28/2024 | 18 | MINUTE entry before the Honorable Andrea R. Wood: The call-in number for the telephonic status hearing set for 11/6/2024 has changed. The call-in number is (650) 479-3207 and the access code is 1808131170. Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Mailed notice (lma, ) (Entered: 10/28/2024) |
| 11/01/2024 | 19 | MOTION by Plaintiff UL LLC for extension of time *and Joint Status Report* (Kienzler, Richard) (Entered: 11/01/2024) |
| 11/04/2024 | 20 | MINUTE entry before the Honorable Andrea R. Wood: Plaintiff's motion for extension of time 19 is granted. The deadline for the parties to file a motion for entry of a confidentiality order is extended to 11/15/2024. The interim document preservation non-disclosure order will remain in place until further order of the Court. Telephonic status hearing set for 11/6/2024 remains firm. Mailed notice (lma, ) (Entered: 11/04/2024) |
| 11/06/2024 | 21 | MINUTE entry before the Honorable Andrea R. Wood: Telephonic status hearing held on 11/6/2024. As stated on the record, Defendant shall answer or otherwise respond to Plaintiff's complaint by 1/6/2025. The parties shall serve Fed. R. Civ. P. 26(a)(1) initial disclosures by 1/21/2025. Telephonic status hearing set for 1/9/2025 at 9:45 AM. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. The call-in number is (650) 479-3207 and the access code is 1808131170. Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (lma, ) (Entered: 11/08/2024) |
| 11/15/2024 | 22 | MOTION by Plaintiff UL LLC Entry of Confidentiality Order (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit)(Kienzler, Richard) (Entered: 11/15/2024) |
| 11/15/2024 | 23 | Motion to Dissolve Interim Protective Order by Joshua Callington (Cole, Agatha) (Entered: 11/16/2024) |

| | | |
|---|---|---|
| 11/19/2024 | 24 | MINUTE entry before the Honorable Andrea R. Wood: Plaintiff's motion for entry of a confidentiality order 22 and Defendant's motion to dissolve interim protective order 23 are set for a telephonic motion hearing on 11/27/2024 at 10:45 AM. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. The call-in number is (650) 479-3207 and the access code is 1808131170. Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (lma, ) (Entered: 11/19/2024) |
| 11/22/2024 | 25 | TRANSCRIPT OF PROCEEDINGS held on September 17, 2024 before the Honorable Andrea R. Wood. Order Number: 50394. Court Reporter Contact Information: Brenda S. Varney, CSR, RMR, CRR, brenda_varney@ilnd.uscourts.gov.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 12/13/2024. Redacted Transcript Deadline set for 12/23/2024. Release of Transcript Restriction set for 2/20/2025. (Tannehill, Brenda) (Entered: 11/22/2024) |
| 11/22/2024 | 26 | TRANSCRIPT OF PROCEEDINGS held on October 23, 2024 before the Honorable Andrea R. Wood. Order Number: 50394. Court Reporter Contact Information: Brenda S. Varney, CSR, RMR, CRR, brenda_varney@ilnd.uscourts.gov.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 12/13/2024. Redacted Transcript Deadline set for 12/23/2024. Release of Transcript Restriction set for 2/20/2025. (Tannehill, Brenda) (Entered: 11/22/2024) |
| 11/25/2024 | 27 | MEMORANDUM other 23 by UL LLC *in Response to Motion to Dissolve Interim Protective Order* (Attachments: # 1 Exhibit)(Kienzler, Richard) (Entered: 11/25/2024) |

| | | |
|---|---|---|
| 11/27/2024 | 28 | MINUTE entry before the Honorable Andrea R. Wood: Telephonic motion hearing held on 11/27/2024. The Court heard oral argument on Plaintiff's motion for entry of a confidentiality order 22 and Defendant's motion to dissolve interim protective order 23 . The motions are taken under advisement for written ruling. Telephonic status hearing set for 1/9/2025 21 remains firm. Mailed notice (lma, ) (Entered: 11/27/2024) |
| 01/06/2025 | 29 | MOTION by Defendant Joshua Callington to dismiss *; Special (Anti-SLAPP) Motion to Strike All Claims and Dismiss the Complaint*<br><br>(Cole, Agatha) (Entered: 01/06/2025) |
| 01/07/2025 | 30 | MINUTE entry before the Honorable Andrea R. Wood: Telephonic status hearing set for 1/9/2025 is stricken and reset for 1/30/2025 at 9:30 AM. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. The call-in number is (650) 479-3207 and the access code is 1808131170. Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (lma, ) (Entered: 01/07/2025) |
| 01/07/2025 | 31 | MOTION by Defendant Joshua Callington to dismiss *Special Motion to Strike or Dismiss (CORRECTED)*<br><br>(Cole, Agatha) (Entered: 01/07/2025) |
| 01/24/2025 | 32 | ATTORNEY Appearance for Plaintiff UL LLC by James M. Witz (Witz, James) (Entered: 01/24/2025) |
| 01/24/2025 | 33 | MOTION by Attorney Richard T. Kienzler to withdraw as attorney for UL LLC. No party information provided<br><br>(Witz, James) (Entered: 01/24/2025) |
| 01/24/2025 | 34 | MOTION by Plaintiff UL LLC to substitute attorney *James M. Witz for Withdrawing Attorney Richard T. Kienzler*<br><br>(Witz, James) (Entered: 01/24/2025) |
| 01/29/2025 | 35 | MINUTE entry before the Honorable Andrea R. Wood: At the emailed request of the parties, the Court enters the following briefing schedule on Defendant's special motion to strike or dismiss all claims pursuant to Anti-Slapp provisions of Oregon Law, or Rev. Stat. § 31.150 31 . Plaintiff shall file a response by 2/6/2025. Defendant shall file a reply by 2/20/2025. Defendant's motion to strike or dismiss 29 is stricken in light of the corrected motion 31 . Additionally, Plaintiff's motion to withdraw appearance of Richard T. Kienzler 33 and uncontested motion of substitution of counsel 34 are granted. Attorney James M. Witz is substituted as counsel for Plaintiff UL LLC. Attorney Richard T. Kienzler is terminated as counsel of record. Mailed notice (lma, ) (Entered: 01/29/2025) |
| 01/30/2025 | 36 | MINUTE entry before the Honorable Andrea R. Wood: Telephonic status hearing held on 1/30/2025. As discussed on the record, Plaintiff's oral motion to extend response deadline is granted as unopposed. Plaintiff shall file a response to |

| | | |
|---|---|---|
| | | Defendant's special motion to strike or dismiss 31 by 2/13/2025. Defendant shall file a reply by 2/27/2025. Telephonic status hearing set for 2/24/2025 at 9:00 AM. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. The call-in number is (650) 479-3207 and the access code is 1808131170. Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (lma, ) (Entered: 02/03/2025) |
| 02/07/2025 | 37 | MOTION by Plaintiff UL LLC for leave to file excess pages (Witz, James) (Entered: 02/07/2025) |
| 02/09/2025 | 38 | MINUTE entry before the Honorable Andrea R. Wood: Plaintiff's motion for leave to exceed page limitation 37 is granted. Plaintiff may file a brief of no more than 20 pages in response to Defendant's special motion to strike or dismiss 31 . Mailed notice (aw,) (Entered: 02/09/2025) |
| 02/13/2025 | 39 | RESPONSE by UL LLCin Opposition to MOTION by Defendant Joshua Callington to dismiss *Special Motion to Strike or Dismiss (CORRECTED)* 31 (Attachments: # 1 Exhibit 1 - New York Times Article (December 28, 2023), # 2 Exhibit 2 - Affidavit of Andrew VanHagen)(Witz, James) (Entered: 02/13/2025) |
| 02/21/2025 | 40 | MINUTE entry before the Honorable Andrea R. Wood: Due to a change in the Court's schedule, telephonic status hearing set for 2/24/2025 is stricken and reset for 3/5/2025 at 9:45 AM. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. The call-in number is (650) 479-3207 and the access code is 1808131170. Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (lma, ) (Entered: 02/21/2025) |
| 02/27/2025 | 41 | MOTION by Defendant Joshua Callington to clarify */ Request for Clarification re Upcoming Hearing and Subsequent Course of Proceedings on Special (Anti-SLAPP) Motion (31)* (Cole, Agatha) (Entered: 02/27/2025) |
| 03/04/2025 | 42 | Corporate Disclosure Statement and Notification as to Affiliates of Plaintiff UL LLC STATEMENT by UL LLC (Witz, James) (Entered: 03/04/2025) |
| 03/05/2025 | 43 | MINUTE entry before the Honorable Andrea R. Wood: Telephonic status hearing held on 3/5/2025. As discussed on the record, Defendant shall file a reply to their motion to dismiss by 3/19/2025. The Court orally denies Plaintiff's request to deem Defendant's motion to dismiss 31 untimely; instead, pursuant to ORS 31.152, the Court exercises its discretion to allow the filing past the presumptive 60-day deadline. Defendant's oral motion to strike their motion to strike or dismiss 29 is granted as unopposed. The document no. 29 is stricken and shall be placed under |

| | | seal. Defendant's motion/request for clarification 25 is terminated as having been addressed on the record. Telephonic status hearing set for 4/24/2025 at 10:00 AM. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. The call-in number is (650) 479-3207 and the access code is 1808131170. Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (lma, ) (Entered: 03/05/2025) |
|---|---|---|
| 03/13/2025 | 44 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC-23201408. (Seychel, Jenna) (Entered: 03/13/2025) |
| 03/14/2025 | 45 | MINUTE entry before the Honorable Andrea R. Wood: Motion to appear pro hac vice 44 is granted. Mailed notice (lma, ) (Entered: 03/14/2025) |
| 03/20/2025 | 46 | REPLY by Defendant Joshua Callington *in Further Support of Special Motion to Strike 31* (Cole, Agatha) (Entered: 03/20/2025) |
| 03/20/2025 | 47 | SEALED REPLY by Joshua Callington to reply 46 - *EXHIBIT A* (Cole, Agatha) (Entered: 03/20/2025) |
| 03/27/2025 | 48 | MOTION by Plaintiff UL LLC to strike reply 47 , reply 46 *and Sealed Exhibit A* (Witz, James) (Entered: 03/27/2025) |
| 03/27/2025 | 49 | MEMORANDUM by UL LLC in support of motion to strike 48 (Witz, James) (Entered: 03/27/2025) |
| 04/03/2025 | 50 | ATTORNEY Appearance for Defendant Joshua Callington by Leonard C. Goodman (Goodman, Leonard) (Entered: 04/03/2025) |
| 04/21/2025 | 51 | ATTORNEY Appearance for Amicus Whistleblower & Source Protection Program (WHISPeR) by Leonard C. Goodman (Goodman, Leonard) (Entered: 04/21/2025) |
| 04/21/2025 | 52 | MOTION by Amicus Whistleblower & Source Protection Program (WHISPeR) for leave to file *Amicus Brief of the Whistleblower & Source Protection Program (WHISPeR) in Support of Defendant's Anti-SLAPP Motion* (Attachments: # 1 Motion for Leave to File Amicus Brief, # 2 Certificate of Service) (Goodman, Leonard) (Entered: 04/21/2025) |
| 04/24/2025 | 53 | MINUTE entry before the Honorable Andrea R. Wood: Telephonic status hearing held on 4/24/2025. As stated on the record, the attorney appearance filed at docket no. 50 is stricken as erroneously filed. The Court sets the following briefing schedule on the Amicus Curiae brief in support of Defendant's Anti-Slapp motion 52 . Responses shall be filed by 5/5/2025. Replies shall be filed by 5/12/2025. The Court takes under advisement Defendant's request for oral argument on his special motion to strike or dismiss all claims pursuant to Anti-Slapp provisions of Oregon Law, or Rev. Stat. § 31.150 31 . Telephonic status hearing set for 5/5/2025 at 1:30 PM. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. The call-in number is (650) 479-3207 and the access code is 1808131170. Counsel of record will receive an email 30 |

| | | |
|---|---|---|
| | | minutes prior to the start of the telephone hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (lma, ) (Entered: 04/30/2025) |
| 05/05/2025 | 54 | MEMORANDUM by UL LLC in Opposition to motion for leave to file, 52 *Amicus Brief* (Witz, James) (Entered: 05/05/2025) |
| 05/05/2025 | 55 | MINUTE entry before the Honorable Andrea R. Wood:Telephone conference held. Plaintiff to file Preliminary Injunction Motion regarding Plaintiff's use and disclosure of allegedly misappropriated documents, with supporting declarations, by 5/20/25; response due June 3, 2025. An oral argument to address the anticipated preliminary injunction motion and the pending Special Motion to Strike or Dismiss Pursuant to Anti-Slapp Provisions of Oregon Law 31 is set for 6/18/2025 at 11:00 a.m. by video conference. Counsel of record will receive an email 30 minutes prior to the start of the video conference with instructions to join the conference. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (air, ) (Entered: 05/05/2025) |
| 05/12/2025 | 56 | REPLY by Amicus Whistleblower & Source Protection Program (WHISPeR) to memorandum in opposition to motion 54 , motion for leave to file, 52 (Goodman, Leonard) (Entered: 05/12/2025) |
| 05/14/2025 | 57 | MOTION by Plaintiff UL LLC for leave to file excess pages *for its Memorandum in Support of its Motion for Preliminary Injunction*<br><br>(Witz, James) (Entered: 05/14/2025) |
| 05/19/2025 | 58 | ATTORNEY Appearance for Plaintiff UL LLC by Kevin E Griffith (Griffith, Kevin) (Entered: 05/19/2025) |
| 05/19/2025 | 59 | ATTORNEY Appearance for Plaintiff UL LLC by Emily E Levy (Levy, Emily) (Entered: 05/19/2025) |
| 05/20/2025 | 60 | MOTION by Plaintiff UL LLC for preliminary injunction *(Limited)*<br><br>(Witz, James) (Entered: 05/20/2025) |
| 05/20/2025 | 61 | MEMORANDUM by UL LLC in support of motion for preliminary injunction 60 (Attachments: # 1 Exhibit 1 - Declaration of Michael Sperber, # 2 Exhibit 2 - Declaration of Andrew VanHagen, # 3 Exhibit 3 - Declaration of Geetanjli Malhotra, # 4 Exhibit 4 - Callingtons Former Counsel and Malhotra Emails Related to Document Requests, # 5 Exhibit 5 - Malhotra and Callingtons Former Counsel Emails Related to Callingtons Transmission of Documents to Sidley)(Witz, James) (Entered: 05/20/2025) |
| 05/20/2025 | 62 | MOTION by Plaintiff UL LLC to seal document<br><br>(Witz, James) (Entered: 05/20/2025) |
| 05/20/2025 | 63 | SEALED DOCUMENT by Plaintiff UL LLC (Witz, James) (Entered: 05/20/2025) |

| | | |
|---|---|---|
| 06/02/2025 | 64 | MOTION by Defendant Joshua Callington for extension of time to file response/reply as to motion for preliminary injunction 60 *and to delay start time of upcoming hearing by 30 minutes to 11:30 on June 18, 2025*<br><br>(Cole, Agatha) (Entered: 06/02/2025) |
| 06/03/2025 | 65 | TRANSCRIPT OF PROCEEDINGS held on May 5, 2025, before the Honorable Andrea R. Wood. Order Number: 51969. Court Reporter Contact Information: Laura LaCien, 312-408-5032, laura_lacien@ilnd.uscourts.gov.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 6/24/2025. Redacted Transcript Deadline set for 7/4/2025. Release of Transcript Restriction set for 9/1/2025. (Lacien, Laura) (Entered: 06/03/2025) |
| 06/03/2025 | 66 | MINUTE entry before the Honorable Andrea R. Wood: Plaintiff's motion for leave to exceed page limitation 57 and motion for leave to file exhibit under seal 62 are granted. Mailed notice (lma, ) (Entered: 06/03/2025) |
| 06/11/2025 | 67 | MOTION by Plaintiff UL LLC for leave to appear as Attorney _*Richard T. Kienzler*<br><br>(Witz, James) Modified on 6/17/2025 (lma, ). (Entered: 06/11/2025) |
| 06/14/2025 | 68 | DECLARATION by Joshua Callington in Opposition to MOTION by Plaintiff UL LLC for preliminary injunction *(Limited)*<br><br>60 , MOTION by Plaintiff UL LLC Entry of Confidentiality Order<br><br>22 *Declaration of Joshua Callington* (Cole, Agatha) Modified on 6/17/2025 (lma, ). (Entered: 06/14/2025) |
| 06/15/2025 | 69 | RESPONSE by Joshua Callington in Opposition to MOTION by Plaintiff UL LLC for preliminary injunction *(Limited)*<br><br>60 (Cole, Agatha) Modified on 6/17/2025 (lma, ). (Entered: 06/15/2025) |
| 06/16/2025 | 70 | MOTION by Plaintiff UL LLC to strike response in opposition to motion, 68 , response in opposition to motion 69 *or; Alternatively, Reschedule the June 18, 2025 Oral Argument*<br><br>(Witz, James) (Entered: 06/16/2025) |
| 06/16/2025 | 71 | MEMORANDUM by UL LLC in support of motion to strike 70 *Defendant's Response in Opposition to Plaintiff's Motion for a Limited Preliminary Injunction or; Alternatively, Reschedule the June 18, 2025 Oral Argument* (Attachments: # 1 Exhibit 1 - Email Correspondences Between Counsel, # 2 Exhibit 2 - Email Correspondences Between Counsel)(Witz, James) (Entered: 06/16/2025) |
| 06/17/2025 | 72 | MINUTE entry before the Honorable Andrea R. Wood: Both Plaintiff and Defendant have filed motions to move the scheduled argument on Plaintiff's motion for a limited preliminary injunction 60 . Defendant seeks to push the 6/18/2025 hearing back by 30 minutes to 11:30 AM. (See 64 .) The Court, however, is not |

available at 11:30 AM for a hearing that includes substantive oral argument. Accordingly, given the issues raised by Plaintiff's motion to strike Defendant's response in opposition to Plaintiff's motion for a limited preliminary injunction or, alternatively, reschedule the 6/18/2025 oral argument (see 70) is granted, the Court strikes the video hearing set for 6/18/2025 at 11:00 AM and sets a telephonic status hearing for 6/18/2025 at 11:30 AM. At the status hearing, the Court will address (1) Defendant's oversized response to Plaintiff's motion, and (2) setting a new date for argument on Plaintiff's motion. The call-in number is (650) 479-3207 and the access code is 1808131170. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (lma, ) (Entered: 06/17/2025)

| Date | Doc | Description |
|---|---|---|
| 06/18/2025 | 73 | MINUTE entry before the Honorable Andrea R. Wood: Telephonic status hearing held on 6/18/2025. For the reasons stated on the record, Defendant's motion to extend briefing schedule 64 is granted. Defendant's response brief 69 is deemed timely filed. Additionally, the Court grants Defendant leave to file their response brief in excess of 15-pages. Any motion for a supplemental submission to be filed under seal shall be filed by 6/20/2025. Motion for leave to file attorney appearance 67 is granted. Plaintiff's motion to strike Defendant's response or, alternatively, reschedule oral argument 70 is denied in part and granted in part. Oral argument on Plaintiff's motion for a limited preliminary injunction 60 is rescheduled to 6/26/2025 at 2:00 PM. The hearing will proceed by video conference. To ensure public access to court proceedings, members of the public and media may call in to listen to remote hearings. The call-in number is (650) 479-3207 and the meeting ID is 1808131170#. Counsel of record will receive an email prior to the start of the hearing with instructions to join the conference. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (lma, ) (Entered: 06/18/2025) |
| 06/20/2025 | 74 | MOTION by Defendant Joshua Callington for leave to file *Confidential Witness Declaration(s)* <br><br>(Cole, Agatha) (Entered: 06/20/2025) |
| 06/20/2025 | 75 | DECLARATION of Confidential Witness No. 1 ("CW1") (Cole, Agatha) (Entered: 06/20/2025) |
| 06/20/2025 | 76 | DECLARATION of Confidential Witness No. 3 ("CW3") (Cole, Agatha) (Entered: 06/20/2025) |
| 06/20/2025 | 77 | DECLARATION of Confidential Witness No. 2 ("CW2") (Cole, Agatha) Provisionally sealed on June 20, 2025 per request of Attorney Cole. Modified on 6/20/2025 (Bruton, Thomas). (Entered: 06/20/2025) |
| 06/20/2025 | 78 | DECLARATION of Confidential Witness No. 2 ("CW2") (corrected) (Cole, Agatha) (Entered: 06/20/2025) |

| 06/24/2025 | 79 | ATTORNEY Appearance for Plaintiff UL LLC by Richard P. Kienzler (Kienzler, Richard) (Entered: 06/24/2025) |
|---|---|---|
| 06/24/2025 | 80 | MEMORANDUM declaration 76 by UL LLC *in Opposition to Defendant Joshua Callington's Motion for Leave to File Supplemental Confidential Witness Declarations* (Kienzler, Richard) (Entered: 06/24/2025) |
| 06/26/2025 | 81 | MINUTE entry before the Honorable Andrea R. Wood: Oral argument held by videoconference on 6/26/2025. Plaintiff's motion for limited preliminary injunction 60 and Defendant's special motion to strike or dismiss all claims pursuant to anti-SLAPP provisions of Oregon law 31 are taken under advisement for ruling. Telephonic status hearing set for 7/22/2025 at 10:30 AM. The call-in number is (650) 479-3207 and the access code is 1808131170. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (jn,) (Entered: 06/30/2025) |
| 07/03/2025 | 🔒 82 | TRANSCRIPT OF PROCEEDINGS held on November 27, 2024 before the Honorable Andrea R. Wood. Order Number: 52105. Court Reporter Contact Information: Brenda Varney, CSR, RMR, CRR, brenda_varney@ilnd.uscourts.gov. IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings. Redaction Request due 7/24/2025. Redacted Transcript Deadline set for 8/4/2025. Release of Transcript Restriction set for 10/1/2025. (Tannehill, Brenda) (Entered: 07/03/2025) |
| 07/03/2025 | 🔒 83 | TRANSCRIPT OF PROCEEDINGS held on January 30, 2025 before the Honorable Andrea R. Wood. Order Number: 52105. Court Reporter Contact Information: Brenda Varney, CSR, RMR, CRR, brenda_varney@ilnd.uscourts.gov. IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings. Redaction Request due 7/24/2025. Redacted Transcript Deadline set for 8/4/2025. Release of Transcript Restriction set for 10/1/2025. (Tannehill, Brenda) (Entered: 07/03/2025) |
| 07/03/2025 | 🔒 84 | TRANSCRIPT OF PROCEEDINGS held on March 5, 2025 before the Honorable Andrea R. Wood. Order Number: 52105. Court Reporter Contact Information: Brenda Varney, CSR, RMR, CRR, brenda_varney@ilnd.uscourts.gov. |

| | | | |
|---|---|---|---|
| | | | IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 7/24/2025. Redacted Transcript Deadline set for 8/4/2025. Release of Transcript Restriction set for 10/1/2025. (Tannehill, Brenda) (Entered: 07/03/2025) |
| 07/03/2025 | 🔒 | 85 | TRANSCRIPT OF PROCEEDINGS held on April 24, 2025 before the Honorable Andrea R. Wood. Order Number: 52105. Court Reporter Contact Information: Brenda Varney, CSR, RMR, CRR, brenda_varney@ilnd.uscourts.gov.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 7/24/2025. Redacted Transcript Deadline set for 8/4/2025. Release of Transcript Restriction set for 10/1/2025. (Tannehill, Brenda) (Entered: 07/03/2025) |
| 07/22/2025 | 🔒 | 86 | ENTERED IN ERROR; Modified on 7/22/2025 (lk, ). (Entered: 07/22/2025) |
| 07/22/2025 | 🔒 | 87 | TRANSCRIPT OF PROCEEDINGS held on 06/26/2025 before the Honorable Andrea R. Wood. Oral Argument. Order Number: 52105. Court Reporter Contact Information: Gayle A. McGuigan, CSR, RMR, CRR, Gayle_McGuigan@ilnd.uscourts.gov.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 8/12/2025. Redacted Transcript Deadline set for 8/22/2025. Release of Transcript Restriction set for 10/20/2025. (McGuigan, Gale) (Entered: 07/22/2025) |
| 07/22/2025 | | 88 | MINUTE entry before the Honorable Andrea R. Wood: Telephonic status hearing held on 7/22/2025 and continued to 8/7/2025 at 1:15 PM. The call-in number is (650) 479-3207 and the access code is 1808131170. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (kp, ) (Entered: 07/25/2025) |

| | | |
|---|---|---|
| 08/07/2025 | 89 | MINUTE entry before the Honorable Andrea R. Wood: For the reasons stated in the accompanying Memorandum Opinion and Order, Defendant Callington's special motion to strike or dismiss all claims pursuant to anti-SLAPP provisions of Oregon law 31 is denied and Plaintiff UL LLC's motion for a limited preliminary injunction 60 is granted. In addition, Defendant's motion for leave to file supplemental confidential witness declarations 74 is denied. Motion for leave to file amicus brief by Amicus Curiae Whistleblower 52 is granted. Plaintiff UL LLC's motion to strike Defendant Joshua Callington's reply and sealed exhibit A 48 is denied. Plaintiff UL LLC's motion for entry of confidentiality order 22 is terminated as moot. Telephonic status hearing set for 8/7/2025 remains firm. Mailed notice (lma, ) (Entered: 08/07/2025) |
| 08/07/2025 | 90 | MEMORANDUM Opinion and Order. Signed by the Honorable Andrea R. Wood on 8/7/2025. Mailed notice (lma, ) (Entered: 08/07/2025) |
| 08/07/2025 | 91 | PRELIMINARY INJUNCTION ORDER signed by the Honorable Andrea R. Wood on 8/7/2025.Mailed notice (aw,) (Entered: 08/07/2025) |
| 08/07/2025 | 92 | MINUTE entry before the Honorable Andrea R. Wood: Telephonic status hearing held on 8/7/2025. The Court and the parties discussed the language of the preliminary injunction to be entered consistent with the Court's memorandum opinion and order dated 8/7/2025 89 , 90 . The Court will make revisions to Plaintiff's proposed preliminary injunction order as discussed on the record prior to issuing the order. The Court further notes that the parties did not address the issue of a bond in their preliminary injunction briefing. The Court grants Defendant's request for time to make a supplemental submission regarding the propriety and amount of a bond. As further stated on the record, by 8/12/2025, the parties are directed to meet and confer to discuss an agreed upon protocol for documents to be provided pursuant to the preliminary injunction. By 8/13/2025, the parties shall file a joint status report to include: (1) a statement on whether an agreement was made related to the transfer of the documents, and (2) whether an agreement was made in regard to the bond requirement, and if not, each side's position. Defendant shall file their answer to Plaintiff's complaint by 9/22/2025. Telephonic status hearing set for 9/24/2025 at 10:30 AM. The call-in number is (650) 479-3207 and the access code is 1808131170. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (lma, ) (Entered: 08/08/2025) |
| 08/11/2025 | 🔒 93 | TRANSCRIPT OF PROCEEDINGS held on August 7, 2025 before the Honorable Andrea R. Wood. Order Number: 52704. Court Reporter Contact Information: Brenda Varney, CSR, RMR, CRR, brenda_varney@ilnd.uscourts.gov.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings. |

Reduction Request due 9/1/2025. Redacted Transcript Deadline set for 9/11/2025. Release of Transcript Restriction set for 11/10/2025. (Tannehill, Brenda) (Entered: 08/11/2025)

| 08/13/2025 | 94 | STATUS Report *on Injunction Compliance and Imposition on Bond* by UL LLC (Kienzler, Richard) (Entered: 08/13/2025) |
| 08/13/2025 | 95 | STATUS Report by Joshua Callington (Cole, Agatha) (Entered: 08/13/2025) |
| 09/05/2025 | 96 | MOTION by Defendant Joshua Callington for reconsideration *and/or to correct or clarify analysis in Order denying anti-SLAPP motion (Dkt. 90)* (Cole, Agatha) (Entered: 09/05/2025) |
| 09/08/2025 | 97 | NOTICE of appeal by Joshua Callington regarding orders 90 Receipt number: y (Cole, Agatha) (Entered: 09/08/2025) |
| 09/10/2025 | 98 | NOTICE of Appeal Due letter sent to counsel of record regarding notice of appeal 97 . (jn,) (Entered: 09/10/2025) |